Argued and submitted January 7, reversed May 25, 1983

STATE OF OREGON,
*Respondent,*
*v.*
CHESTER BERMAN,
*Appellant.*

(81-1738-G; CA A25383)

663 P2d 815

Robert G. Klahn, Klamath Falls, argued the cause and filed the brief for appellant.

William F. Nessly, Jr., Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

BUTTLER, P. J.

## BUTTLER, P. J.

Defendant appeals his conviction for exceeding the possession limit for a game fish (to-wit: trout), assigning as errors (1) the denial of his motion to suppress evidence and (2) the trial court's conclusion that it was a violation of the law to possess more than 20 fish at any given time regardless of when or where the fish were caught. We agree with defendant's second assignment and reverse.

■   Defendant's conviction resulted from a seizure of 76 trout stored in a frozen food locker that he shared with two other persons. Defendant contends that the fish were seized as a result of an unlawful search and that they should have been suppressed. Without detailing the facts or the arguments of the parties, it is sufficient to say that the police had sufficient information to suspect that defendant had been fishing for several months and had taken a large number of trout, which he was saving for a "fish feed." After receiving that information, they persuaded the owner of the market where the locker was located to open it; they found 18 packages, each containing several fish. The fish were returned to the locker. Two days later, two officers contacted defendant in his trailer, and he invited them in. They advised defendant that they had heard he had a lot of fish and that they wanted to see how many he had in his possession. They were shown five fish in the refrigerator of the trailer. One of the officers said to defendant, "Let's go down and count your fish at the locker." Defendant agreed, driving his own car to the market, where he met the officers and opened the locker with his key. The fish were seized, and defendant was arrested. The search of the locker was with defendant's consent; his motion to suppress was properly denied.

After the trial court denied defendant's motion, the case was tried to the court on the following stipulated facts:

"* * * That Ben Fouche, Chester Berman and Chester Berman's girl friend arrived in the Klamath Basin on or about the 25th day of April, 1981 for the purpose of staying for the summer and fishing. That all three fished throughout the summer, and Mr. Berman and Mr. Fouche rented a food locker at Clyde's Market in Chiloquin, Oregon, for the purpose of storing trout that they caught in the summer. That Mr. Fouche, Mr. Berman and his girl friend at no time exceeded the daily

bag limit for streams or for lakes. Also, that at no time were more than two daily bag limits taken in seven (7) consecutive days. Further, that at the time of the issuance of the citation by Trooper Rathkey of the State Police on or about the 28th day of August, 1981, there were approximately seventy-six (76) fish in said frozen food locker."

Defendant was charged with a violation of OAR 635-32-005 2(a) and (b), which, at the relevant time, provided:

"(2)   During the open trout seasons:

"(a)   In all lakes, ponds and reservoirs listed in section (1) of this rule except Ana, Cottonwood Meadows and Lofton reservoirs and Heart Lake the daily bag limit is 10 trout 6 inches or over, not more than 5 of which may be 12 inches or over and, of those 12 inches and over, not more than 2 may be 20 inches or over. *No more than 2 daily bag limits may be taken or possessed in any 7 consecutive days,* not more than 10 of which may be 12 inches or over and, of those 12 inches and over, not more than 4 may be 20 inches or over.

"(b)   In all streams listed in section (1) of this rule, and in Ana, Cottonwood Meadows and Lofton reservoirs and Heart Lake, the daily bag limit is 5 trout 6 inches or over no more than 2 of which may be over 20 inches. *Not more than 2 daily bag limits may be taken or possessed in 7 consecutive days* no more than 4 of which may be over 20 inches." (Emphasis supplied.)

The state contends, and the trial court held, that the underlined language prohibits any person from having in his possession at any time more than 20 fish,[1] regardless of when or where the fish were caught. That interpretation, defendant contends, ignores the words "in any 7 consecutive days." He argues that, when those words are given effect, the regulation means that a person may neither take nor possess more than two daily bag limits in seven consecutive days. He reasons that the purpose of the regulation is to prohibit anglers on an extended fishing trip from keeping more than twice the daily bag limit during a period of seven consecutive days. He further contends that if the regulation is not so construed, it is too vague to pass constitutional muster, relying on the language from *Grayned v. City of Rockford,* 408 US 104, 108-09, 92 S Ct

---

[1] The highest limit for trout on any stream or lake in Oregon is ten fish a day; twenty fish, therefore, would be the maximum two-day bag limit.

2294, 33 L Ed 2d 222 (1972), quoted in *State v. Robertson,* 293 Or 402, 649 P2d 569 (1982):

> "* * * Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application. * * *" (Footnotes omitted.)

The state counters with the argument that if we find the language ambiguous, the 1981 Oregon Sport Fishing Regulations, which contain a synopsis of the official regulations, "improves upon the wording contained in OAR 635-32-005(2)." The synopsis, at 31, stated:

> "IN NO EVENT MAY GENERAL BAG LIMIT EXCEED 10 TROUT PER DAY.
>
> "A. LAKES, PONDS (except instream beaver ponds), and RESERVIORS: 10 trout 6 inches or over per day, not more than 5 of which may be 12 inches or over, and of those 12 inches or over not more than 2 may be 20 inches or over: 20 in possession or in 7 consecutive days not more than 10 of which may be 12 inches or over, and of those 12 inches or over not more than 4 may be 20 inches or over."

We confess that we do not know what the language in the official regulation means. Assuming that the synopsis is an agency interpretation that may clarify the otherwise vague rule, *see State v. Robertson,* 293 Or at 411, we do not think it does so here. It rearranges the words, but the ambiguity remains. An angler of ordinary intelligence should be able to know what is permitted and what is not by reading the agency's regulations. We do not think that that is the case here. If the rule is intended to mean that an angler may not have in his possession at any one instant more than two days' bag limit, we fail to understand the significance of the words "in 7 consecutive days." Similarly, if it is intended to prohibit the taking of more than two days' bag limit if the angler fishes

more than one day, the 7 consecutive days language adds nothing.

■       We conclude that the regulation is too vague to give fair notice of what is prohibited and that the synopsis does not cure that defect. As it stood at the time involved here,[2] the regulation was more suited to catching anglers than it was to apprising anglers how many fish they could keep.

Reversed.

---

[2] The regulation has been revised for the 1983 season. OAR 635-11-110(3) now provides:

"The possession limit is the maximum number of fish or shellfish that may be lawfully in possession of any one person. No person may possess more than 2 daily limits of a species for which a daily limit exists, except for sturgeon, halibut, salmon and steelhead. The sturgeon and halibut possession limit is 1 daily limit. The salmon and steelhead possession limit is the annual limit."